# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| JOSHUA J. V.,[1]          ) | |
|          ) | |
| **Plaintiff,**      ) | |
|          ) | **CIVIL ACTION** |
| v.          ) | |
|          ) | No. 20-1106-JWL |
| ANDREW M. SAUL,      ) | |
| **Commissioner of Social Security,**    ) | |
|          ) | |
| **Defendant.**     ) | |

---

## MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Commissioner of Social Security denying Supplemental Security Income (SSI) benefits pursuant to sections 1602 and 1614 of the Social Security Act, 42 U.S.C. §§ 1381a and 1382c (hereinafter the Act). Finding no error in the Administrative Law Judge's (ALJ) evaluation of the medical opinions assessed by Dr. Moore and Mr. Boniello, the psychiatrist and social worker, respectively, who treated Plaintiff, and of the moderate mental limitations contained therein, the court ORDERS that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

## I.     Background

---

[1] The court makes all its "Memorandum and Order[s]" available online. Therefore, in the interest of protecting the privacy interests of Social Security disability claimants, it has determined to caption such opinions using only the initial of the Plaintiff's last name.

Plaintiff protectively filed an application for SSI benefits on July 11, 2017.  (R. 15, 215-17).  After exhausting administrative remedies before the Social Security Administration (SSA), Plaintiff filed this case seeking judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g).  Plaintiff claims the ALJ erred in evaluating the medical opinions of Dr. Moore and Mr. Boniello and failed to account for the moderate mental limitations they assessed, and which the ALJ found persuasive.

The court's review is guided by the Act.  Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009).  Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether he applied the correct legal standard.  Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001).  "Substantial evidence" refers to the weight, not the amount, of the evidence.  It requires more than a scintilla, but less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971); see also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).  Consequently, to overturn an agency's finding of fact the court "must find that the evidence not only supports [a contrary] conclusion, but compels it."  I.N.S. v. Elias-Zacarias, 502 U.S. 478, 481, n.1 (1992) (emphases in original).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency."  Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting

2

Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord,

Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005); see also, Bowling v. Shalala,

36 F.3d 431, 434 (5th Cir. 1994) (The court "may not reweigh the evidence in the record,

nor try the issues de novo, nor substitute [the Court's] judgment for the

[Commissioner's], even if the evidence preponderates against the [Commissioner's]

decision.") (quoting Harrell v. Bowen, 862 F.2d 471, 475 (5th Cir. 1988)).  Nonetheless,

the determination whether substantial evidence supports the Commissioner's decision is

not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by

other evidence or if it constitutes mere conclusion.  Gossett, 862 F.2d at 804-05; Ray v.

Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

 The Commissioner uses the familiar five-step sequential process to evaluate a

claim for disability.  20 C.F.R. § 416.920; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th

Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)).  "If a

determination can be made at any of the steps that a claimant is or is not disabled,

evaluation under a subsequent step is not necessary."  Wilson, 602 F.3d at 1139 (quoting

Lax, 489 F.3d at 1084).  In the first three steps, the Commissioner determines whether

claimant has engaged in substantial gainful activity since the alleged onset, whether he

has a severe impairment(s), and whether the severity of his impairment(s) meets or equals

the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt.

P, App. 1).  Williams, 844 F.2d at 750-51.  After evaluating step three, the Commissioner

assesses claimant's residual functional capacity (RFC).  20 C.F.R. § 416.920(e).  This

assessment is used at both step four and step five of the sequential evaluation process.  Id.

The Commissioner next evaluates steps four and five of the process—determining at step four whether, considering the RFC assessed, claimant can perform his past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, he is able to perform other work in the economy. Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work.  Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2.  At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC previously assessed.  Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

## II.     Discussion

Plaintiff claims "the ALJ found the treating source opinions from Dr. Moore and Mr. Boniello to be partially persuasive, specifically finding the mild to moderate limitations from the opinions to be supported by and consistent with the record."  (Pl. Br. 8).  He argues that having found these moderate limitations persuasive, the ALJ erred by failing to include them in the RFC assessed or by explaining how he accounted for them. Id.  He argues, "The forms the providers completed defined a moderate limitation as a 30% overall reduction in performance."  Id. at 9 (citing R. 566, 1868, 1882).  He argues:

> The ALJ's RFC for simple, routine, repetitive tasks with occasional interaction with coworkers and no interaction with the general public, the ability to adapt to changes in the workplace on a basic level, and the ability to accept supervision on a basic level does not incorporate the moderate limitations the ALJ credited.  Specifically, the RFC does not include a

4

<u>limitation in the ability to maintain attention and concentration for extended
periods</u>.

(Pl. Br. 9-10) (emphasis added).  He asserts this constitutes a rejection of some of the

moderate limitations opined by Dr. Moore and Mr. Boniello and requires an explanation

for doing so, but the ALJ did not provide that explanation.  <u>Id.</u> at 10-12 (citing <u>Carr v.

Commissioner, SSA</u>, 734 Fed. App'x. 606, 610-611 (10th Cir. 2018); <u>Jaramillo v. Colvin</u>,

576 Fed. App'x. 870, 875 (10th Cir. 2014); <u>Curtis Joseph K. v. Saul</u>, No. 19-2673-JWL,

2020 WL 5369354, at *4 (D. Kan. Sept. 8, 2020); <u>D.M. v. Comm'r of SSA</u>, No. 19-1146-

SAC, 2019 WL 6327585 (D. Kan. Nov. 26, 2019); <u>Murray v. Colvin</u>, No. 13-2173-JWL,

2014 WL 4113330 (D. Kan. Aug. 19, 2014); <u>Washington v. Colvin</u>, No. 13-1147-SAC,

2014 WL 4145547, at *3 (D. Kan. Aug. 19, 2014); <u>Lodwick v. Astrue</u>, No. 10-1394-

SAC, 2011 WL 6253799, at *4 (D. Kan. Dec. 13, 2011)).

He argues the Tenth Circuit has found limitations related to an individual's ability

to sustain attention and concentration for extended periods are not captured within a

limitation to unskilled work.  <u>Id.</u> at 13 (citing <u>Frantz v. Astrue</u>, 509 F.3d 1299, 1302–03

(10th Cir.2007); and <u>Jaramillo</u>, 576 Fed. Appx. at 876).  He argues the Program

Operations Manual System (POMS) "explains that any job requires the 'ability to

maintain concentration and attention for extended periods (the approximately 2-hour

segments between arrival and first break, lunch, second break, and departure).'"  (Pl. Br.

12) (quoting POMS DI 25020.010 B.2.a, available online at

https://secure.ssa.gov/poms.NSF/lnx/0425020010, last visited December 28, 2020).

The Commissioner argues that the mental RFC assessed by the ALJ accounts for Plaintiff's mental impairments.  The Commissioner acknowledges that the ALJ found Dr. Moore's and Mr. Boniello's opinions partially persuasive in that he found Dr. Moore's assessment of mild and moderate limitations were persuasive and Mr. Boniello's assessment of moderate limitations were persuasive and he found their assessment of marked and extreme limitations unpersuasive.  (Comm'r Br. 5).  The Commissioner also noted the ALJ found the opinions regarding being off task and missing work unpersuasive.  Id.  The Commissioner noted that the ALJ found the prior administrative medical findings of the state agency psychological consultants, Dr. Sullivan and Dr. Shafer persuasive.   Id. at 6.  He argues that to accommodate the moderate limitations assessed by all four of these health care providers, "the ALJ limited Plaintiff to simple, routine, repetitive tasks with occasional interaction with coworkers, no interaction with the general public, and basic level supervision."  Id. at 7 (citing R. 21).

The Commissioner points out Plaintiff applied for SSI benefits after March 27, 2017 and his application is subject to new regulations effective that date which differ substantially from the prior regulations.  Id.  He points out that the new regulations do not use the term "treating source" and no longer apply the treating physician rule when evaluating medical opinions.  Id. at 8.  He argues the ALJ applied the new regulations and that the POMS requires "general terms or severity ratings (such as moderate) should not be used because they 'do not describe function and do not usefully convey the extent of capacity limitations.'"  Id. at 9 (quoting POMS DI 24510.065.B.1.c, 2001 WL 1933372, (SSA July 2, 2018)).

He argues that at least two published cases in the Tenth Circuit "recognized that an ALJ may account for ratings of moderate limitations in mental functioning by limiting a claimant to particular types of work, such as simple or unskilled work." (Comm'r Br. 9) (citing Smith v. Colvin, 821 F.3d 1264, 1268-69 (10th Cir. 2016); Vigil v. Colvin, 805 F.3d 1199, 1203-04 (10th Cir. 2015)).  The Commissioner distinguishes the cases cited by Plaintiff, and in his final paragraph argues that the court should defer to the SSA to resolve evidentiary conflicts.  Id. at 10-11 (citing Allman v. Colvin, 813 F.3d 1326, 1333 (10th Cir. 2016) (ALJ is entitled to resolve such evidentiary conflicts)).

In his Reply Brief, Plaintiff argues that the POMS's prohibition of terms such as moderate is not applicable in this case because the forms used by Dr. Moore and Mr. Boniello contain a precise definition of moderate, and a narrative statement describing functional limitations is, therefore, unnecessary.  (Reply 2-3).  He argues the Commissioner's attempt to distinguish Jaramillo does not rest upon a valid distinction, and that Smith and Vigil should be distinguished from this case.  Id. at 3-4.

## A.   The Standard Applicable

Effective March 27, 2017, the regulations changed the procedures and standards for evaluating evidence, including medical source opinions.  The regulation abrogated the treating physician rule for claims filed on or after March 27, 2017.  As relevant here, the new regulations define "medical opinion" and "prior administrative medical finding:"

> (2) Medical opinion.  A medical opinion is a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions in the abilities listed [below] …

7

(i) …

    (A) Your ability to perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching);

    (B) Your ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting;

    (C) Your ability to perform other demands of work, such as seeing, hearing, or using other senses; and

    (D) Your ability to adapt to environmental conditions, such as temperature extremes or fumes.

\*\*\*

(5) Prior administrative medical finding.  A prior administrative medical finding is a finding, other than the ultimate determination about whether you are disabled, about a medical issue made by our Federal and State agency medical and psychological consultants at a prior level of review (see § 416.1400) in your current claim based on their review of the evidence in your case record, such as:

    (i) The existence and severity of your impairment(s);

    (ii) The existence and severity of your symptoms;

    (iii) Statements about whether your impairment(s) meets or medically equals any listing in the Listing of Impairments in Part 404, Subpart P, Appendix 1; …

    (v) … your residual functional capacity;

    (vi) Whether your impairment(s) meets the duration requirement; and

(vii) How failure to follow prescribed treatment (see § 416.930) and drug addiction and alcoholism (see § 416.935) relate to your claim.

20 C.F.R. § 416.913(a) (2017).  A "medical source," who might provide a "medical opinion" as defined above, is defined by the new regulations as "an individual who is licensed as a healthcare worker by a State and working within the scope of practice permitted under State or Federal law."  20 C.F.R. § 416.902(i) (2017).

The new regulations include a new section entitled "How we consider and articulate medical opinions and prior administrative medical findings for claims filed on or after March 27, 2017."  20 C.F.R. § 416.920c (2017).  That regulation provides that the Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources."  20 C.F.R. § 416.920c(a) (2017).

The regulation provides that the SSA will consider each medical source's opinions using five factors, supportability, consistency, relationship of source to claimant, specialization, and other factors tending to support or contradict a medical opinion or prior administrative medical finding.  20 C.F.R. § 416.920c(c)(1-5) (2017).  It provides that the most important factors in evaluating persuasiveness are supportability and consistency.  Id. § 416.920c(a) (2017).

The regulation explains that the decision will articulate how persuasive the SSA finds all medical opinions and prior administrative medical findings.  20 C.F.R. § 416.920c(b) (2017).  The articulation requirement applies for each source, but not for

each opinion of that source separately.  20 C.F.R. § 416.920c(b)(1) (2017).  It requires

that the SSA

> will explain how we considered the supportability and consistency factors
> for a medical source's medical opinions or prior administrative medical
> findings in your determination or decision.  We may, but are not required
> to, explain how we considered the factors in paragraphs (c)(3) through
> (c)(5) of this section, as appropriate, when we articulate how we consider
> medical opinions and prior administrative medical findings in your case
> record.

20 C.F.R. § 416.920c(b)(2) (2017).  The regulation explains that when the decision-

maker finds two or more medical opinions or prior administrative medical findings are

equal in supportability and consistency "but are not exactly the same," the decision will

articulate the other most persuasive factors from paragraphs (c)(3) through (c)(5).  20

C.F.R. § 416.920c(b)(3) (2017).  Finally, the regulation explains that the SSA is not

required to articulate how it considered evidence from non-medical sources.  20 C.F.R.

§ 416.920c(d) (2017).

## B.        The ALJ's Findings Relevant to this Issue

In applying the Commissioner's psychiatric review technique at step three of the

sequential evaluation process, the ALJ evaluated the four broad mental functional areas

used to consider whether a mental impairment meets or equals the severity of a Listed

impairment—the "paragraph B" criteria.  (R. 19) see also, 20 C.F.R., Pt. 404, Subpt. P,

App. 1 § 12.00A(2)(b).  Those criteria are understanding, remembering, or applying

information; interacting with others; concentrating, persisting, or maintaining pace; and

adapting or managing oneself.  Id., see also, 20 C.F.R., Pt. 404, Subpt. P, App. 1

§ 12.00E.  The ALJ found Plaintiff has a mild limitation in understanding, remembering,

or applying information and moderate limitations in the other paragraph B criteria.  (R.

19-20).

The ALJ noted that his assessment of the paragraph B criteria agreed with the

prior administrative medical findings[2] of the state agency psychological consultants, Dr.

Sullivan and Dr. Shafer.  (R. 20).  He explained he found these findings persuasive

because they

> are supported by the specific medical records and non-medical evidence
> [Dr. Sullivan and Dr. Shafer] cite in their respective "Psychiatric Review
> Technique" forms.  Their opinions are consistent with the overall evidence
> from the claimant's medical sources.  Finally, Dr. Sullivan and Dr. Shafer
> are familiar with the Social Security Administration's disability program
> policies and evidentiary requirements.

Id.  The ALJ recognized Plaintiff's counsel's suggestion at the disability hearing that

based on the opinions of Dr. Moore and Mr. Boniello, Plaintiff's condition "meets the

requirements of Listing 12.04," id., but found that suggestion

> not persuasive since the opinions from those sources that the claimant has
> extreme or marked limitations in some areas of functioning are not
> supported by their own mental health treatment notes, and are not
> consistent with the overall evidence in the record.

Id. at 21.

In his RFC assessment, the ALJ noted Dr. Moore's mental health progress notes

"are handwritten and hard to read," and he found them to "have little probative value."

---

[2] The ALJ called these findings "opinions," but he later stated that he had "considered the medical opinion(s) and prior administrative medical finding(s) in accordance with the requirements of 20 CFR 416.920c" (R. 21), and in accordance with that regulation, Dr. Sullivan's and Dr. Shafer's opinions are prior administrative medical findings.

Id. at 30.  The ALJ provided an extensive evaluation of the medical opinions, which the

court includes in relevant part here.

> The undersigned finds Mr. Boniello's opinions partially persuasive to the
> extent that the claimant's multiple severe mental impairments cause some
> functional limitations, but the overall evidence in the record shows that his
> mental functional limitations are not disabling.

(R. 32).

> Dr. Sullivan and Dr. Shafer both found that the claimant is moderately
> limited in his ability to do the following: carry out detailed instructions;
> maintain attention and concentration for extended periods; work in
> coordination with or in proximity to others without being distracted by
> them; complete a normal workday and workweek without interruptions
> from psychologically based symptoms and to perform at a consistent pace
> without an unreasonable number and length of rest periods; interact
> appropriately with the general public; and accept instructions and respond
> appropriately to criticism from supervisors.  The undersigned finds their
> opinions to be persuasive because they are supported by the claimant's
> mental health treatment notes in evidence, and their findings are consistent
> with the overall evidence in the record and the determined mental residual
> functional capacity.  In addition, Dr. Sullivan and Dr. Shafer are familiar
> with the Social Security Administration's disability program policies and
> evidentiary requirements.  However, the undersigned has added the
> adaptive limitations in the determined residual functional capacity in light
> of the claimant's moderate mental functional limitations.

> The claimant's treating psychiatrist, Dr. Moore, submitted two medical
> source statements regarding the claimant's mental functioning (Ex. 12F,
> 15F).  The undersigned finds that Dr. Moore's opinions in these medical
> source statements are partially persuasive to the extent that the claimant's
> multiple severe mental impairments cause some functional limitations, but
> the overall evidence in the record shows that his mental functional
> limitations are not disabling.  Since Dr. Moore's handwritten treatment
> notes are not really able to be deciphered, they do not support the
> claimant's claim of disability.  Dr. Moore's opinions that that the claimant
> is mildly limited or moderately limited in some of the areas assessed are
> persuasive because his severe mental impairments reasonably cause some
> functional limitations.  However, the following specific opinions from Dr.
> Moore about the claimant's mental functioning are not persuasive at all
> because they are not supported by the claimant's mental status findings

throughout the record: he would miss 4 days of work per month due to having bad days; he would be off task 10% of the time due to symptoms that would interfere with the attention needed to perform even simple tasks; and markedly or extremely limited in his ability to complete a normal workday and work week without interruption from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods.  The undersigned notes that Dr. Moore opined on August 10, 2017 that the claimant was extremely limited in his ability to complete a normal workday and work week (Ex. 15F/3), and opined on September 17, 2018 that the claimant was markedly limited in his ability to complete a normal workday and work week (Ex. 12F/3).

Mr. Boniello also submitted a medical source statement using one of the same forms as Dr. Moore submitted (Ex. 17F).  Mr. Boniello's opinions that that the claimant is moderately limited in some of the areas assessed are persuasive because his severe mental impairments reasonably cause some functional limitations.  However, Mr. Boniello's opinions that the claimant is markedly limited or extremely limited in many of the areas assessed are not persuasive at all because they are not supported by the claimant's mental status findings throughout the record.  For the same reason, the following additional opinions from Mr. Boniello are also not persuasive at all: he would miss an unspecified number of days of work per month due to having bad days; and he would be off task 25% or more of the time due to symptoms that would interfere with the attention needed to perform even simple tasks.

(R. 33-34) (emphasis added).

## C.    <u>Analysis</u>

As the Commissioner points out, new regulations were promulgated applying to cases filed with the SSA on or after March 27, 2017—as was this case.  The new rules were adopted "[t]o account for the changes in the way healthcare is currently delivered." <u>Revisions to Rules Regarding the Evaluation of Medical Evidence</u>, 82 Fed. Reg. 5,844-01, 5,854, 2017 WL 168819 (SSA Jan. 18, 2017).  The new regulations "focus more on the content of medical opinions <u>and less on weighing treating relationships</u> against each

other [which] is more consistent with current healthcare practice." Id. 82 Fed. Reg. at

5,854 (emphasis added).  The SSA explained,

> By moving away from assigning a specific weight to medical opinions, we
> are clarifying both how we use the terms "weigh" and "weight" in final
> 404.1520c(a), 404.1527, 416.920c(a), and 416.927 and also clarifying that
> adjudicators should focus on how persuasive they find medical opinions
> and prior administrative medical findings in final 404.1520c and 416.920c.
> Our intent in these rules is to make it clear that it is never appropriate under
> our rules to 'credit-as-true' any medical opinion.

Id. at 5,858.  The agency explained its view that

> Courts reviewing claims under our current rules [(applicable to cases filed
> before March 27, 2017)] have focused more on whether we sufficiently
> articulated the weight we gave treating source opinions, rather than on
> whether substantial evidence supports our final decision.  As the
> Administrative Conference of the United States' (ACUS) Final Report
> explains, these courts, in reviewing final agency decisions, are reweighing
> evidence instead of applying the substantial evidence standard of review,
> which is intended to be [a] highly deferential standard to us.

Id. Fed. Reg. 82 at 5,853.

It is clear, under the new regulations ALJ's are to focus on how persuasive a

medical source's opinions are and not on how much weight they should be or have been

given.  An ALJ is to base persuasiveness primarily on the factors of consistency and

supportability and must articulate in his decision how he considered these factors.  He

may, but is not required to, explain how he considered the other three factors:

relationship, specialization, and other factors tending to support or contradict an opinion.

The persuasiveness of the other three factors are only required to be articulated when the

decision-maker finds two or more medical opinions or prior administrative medical

14

findings are equal in supportability and consistency "but are not exactly the same."  20 C.F.R. § 416.920c(b)(3) (2017).

Here, the ALJ did just as the new regulations require.  He explained, based on the factors of consistency and supportability, how persuasive he found the opinions of Dr. Sullivan, Dr. Shafer, Dr. Moore, and Mr. Boniello.  (R. 20, 21, 30, 32, 33-34 (as quoted supra)).  As Plaintiff suggests, Soc. Sec. Ruling (SSR) 96-8p contains a narrative discussion requirement providing that an ALJ must explain how any ambiguities and material inconsistencies in the evidence were considered and resolved.  West's Soc. Sec. Reporting Serv., Rulings 149 (Supp. 2020).  And, if the ALJ's RFC assessment conflicts with a medical source opinion, the ALJ must explain why he did not adopt the opinion. Id. at 150.  However, the regulations have changed and an ALJ is no longer required to weigh the medical opinions and explain the weight he accords each opinion.

Nonetheless, the agency must give reasons for its decisions.  Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995) (quoting Reyes v. Bowen, 845 F.2d 242, 244 (10th Cir. 1988)).  The ALJ found Dr. Moore's opinion regarding mild and moderate mental limitations persuasive and he found Mr. Boniello's opinion regarding moderate mental limitations persuasive.  (R. 34).  Therefore, as Plaintiff argues, the ALJ found their opinions—that Plaintiff is moderately limited in the ability to maintain attention and concentration for extended periods—persuasive.  And, as the Commissioner points out, Dr. Sullivan and Dr. Shafer also opined that Plaintiff is moderately limited in his ability to maintain attention and concentration for extended periods—and the ALJ found those opinions persuasive.  Id. at 33. Moreover, both these psychiatric consultants found that

even with this moderate limitation (and others) Plaintiff was able to perform "simple and repetitive tasks away from the public."  (R. 86, 105).  This limitation is certainly encompassed well within the ALJ's RFC limitation to "simple, routine, repetitive tasks with occasional interaction with coworkers and no interaction with the general public." (R. 21) (finding no. 4) (bold omitted).

Plaintiff argues, however, that the ALJ rejected Dr. Moore's and Mr. Boniello's opinions in this regard without adequate explanation.  He suggests this is so in part because the forms on which Dr. Moore and Mr. Boniello expressed their opinions define a moderate limitation as "a 30% overall reduction in performance," thereby suggesting their opinions are materially different than those of Dr. Sullivan and Dr. Shafer.  (Pl. Br. 9) (citing R. 566, 1868, 1882).  However, Plaintiff has not been precise in his representation of the form's definition of a moderate limitation.  The form defines "Moderately Limited" as "Impairment levels are compatible with some, but not all useful functioning.  Considered to be 1 standard deviation below the norm, or 30% overall reduction in performance."  (R. 566, 1868, 1882).  The court finds two problems with Plaintiff's argument.

First, the court recognizes the form as a form commonly used in Social Security disability cases in which a medical source is given definitions for the terms used in the form, including the term "Moderately Limited," and is asked to provide answers to certain questions regarding the diagnoses, abilities, and limitations of his patient; and asked to rate the patient's abilities as either "Mildly Limited," "Moderately Limited," "Markedly Limited," or "Extremely Limited" in 20 mental abilities corresponding

16

precisely with the 20 mental abilities listed in the Commissioner's Psychiatric Review Technique form (PRTF) worksheet in which psychiatric consultants such as Dr. Sullivan and Dr. Shafer expressed their findings on the way to arriving at a mental RFC assessment at the initial and reconsideration levels of consideration before the SSA. However, as the Commissioner points out, it is the narrative written by the psychiatric consultant in the PRTF rather than the individual limitations suggested in the worksheet that constitutes the RFC at that level of consideration.  POMS DI 25020.010B.1, Note. Available online at: https://secure.ssa.gov/poms.NSF/lnx/0425020010 (last visited December 28, 2020).  Moreover, the PRTF uses a five-point scale in its worksheet:  no limitation, not significantly limited, moderately limited, markedly limited, and extremely limited; e.g. R. 104-05; whereas the forms provided to Dr. Moore and Mr. Boniello in this case provide  no box to indicate no limitation and thereby suggest to the medical sources that the Plaintiff must be limited to some degree in each of the 20 mental abilities presented.  And, the record contains no evidence that the medical sources are expert or experienced in evaluating mental abilities in the 20 mental abilities listed in accordance with the degree of limitations as defined on the form.  For example, there is no evidence Dr. Moore or Mr. Boniello understand what is "one standard deviation below the norm" or what is a "30% reduction in performance" in each of the 20 mental abilities listed or that they understand the regulations relating to mental impairments.

Finally, and most importantly, "moderately limited" is a term of art used in applying the Commissioner's psychiatric review technique, and Plaintiff, Plaintiff's counsel, or an unknown group of disability proponents may not change the meaning of

17

that term, impose a different meaning on that term, require an ALJ to consider that a different meaning may have been applied to that term in a particular situation, or require a reviewing court to apply different meanings to that term in its review of a decision of the Commissioner. The ALJ's apparent understanding that "moderately limited in the ability to maintain attention and concentration for extended periods" means the same thing as used by Dr. Sullivan, Dr. Shafer, Dr. Moore, and Mr. Boniello, is a reasonable understanding and is supported by substantial evidence. As the Commissioner argues, to accommodate the moderate limitations assessed by all four of these health care providers, the ALJ limited Plaintiff "to simple, routine, repetitive tasks with occasional interaction with coworkers and no interaction with the general public." (R. 21).

The ALJ applied the correct legal standard, and substantial evidence supports the finding he reached. The court may only overturn that finding if the evidence compels a different finding; Elias-Zacarias, 502 U.S. at 481, n.1; and Plaintiff has not met that burden. Plaintiff argues that case law, including cases decided by this court, compels the court to find that a moderate limitation in the ability to maintain attention and concentration for extended periods is not adequately accounted for within a limitation to simple, routine, repetitive tasks. However, as noted above, Dr. Sullivan and Dr. Shafer found Plaintiff moderately limited in the ability to maintain attention and concentration for extended periods (R. 85, 104) and concluded that even with that and other moderately limited mental abilities he is able to perform "simple and repetitive tasks away from the public." (R. 86, 105). This is substantial evidence supporting the ALJ's conclusion, and the fact Plaintiff is of a different opinion does not compel a different result. "The

possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence.  We may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo."  Lax, 489 F.3d at 1084 (citations, quotations, and bracket omitted); see also, Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 620 (1966).

The case law to which Plaintiff appeals does not compel a different result.  Each case cited by Plaintiff in support of his argument was decided under the old regulations applying the treating physician rule and was based, at least in part, on the court's finding that the ALJ had afforded certain weight to a medical source's opinion but inconsistently had not accounted for a portion of that source's opinion which was potentially contrary to the ALJ's assessment.  Under the new regulations, the treating physician rule has been abrogated and an ALJ is prohibited from assigning a relative weight to medical opinions.  Plaintiff does not even attempt to reconcile the case law he cites with the new regulations and, in fact, his "Statement of the Issues" asks, "Did the ALJ properly weigh the medical opinions?"  (Pl. Br. 1) (emphasis added).  In several instances his argument specifically relies on the fact that in the cases cited, the ALJ accorded weight, strong weight, significant weight, or substantial weight, to a particular source's opinions.  Id. 10-13.

The ALJ explained his reasons for finding the medical opinions unpersuasive, partially persuasive, or persuasive, Plaintiff has not shown error in those findings, and the court may not reweigh the evidence or substitute its judgment for that of the

Commissioner.  Plaintiff has not shown the ALJ applied an erroneous standard or that the evidence compels a different result.  Therefore, remand is inappropriate.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

Dated December 28, 2020, at Kansas City, Kansas.

s:/ *John W. Lungstrum*
**John W. Lungstrum**
**United States District Judge**